IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs March 24, 2020

**STATE OF TENNESSEE v. TIMOTHY COLE MOOSE**

**Appeal from the Criminal Court for Monroe County**
**No. 16-350   Andrew M. Freiberg, Judge**

_____

**No. E2019-00648-CCA-R3-CD**

_____

Defendant, Timothy Cole Moose, was charged with one count of possession of a firearm by a convicted felon in an indictment returned by the Monroe County Grand Jury. Following a jury trial, he was found guilty of the lesser included offense of attempted possession of a firearm by a convicted felon. The trial court sentenced defendant to a six-year sentence as a career offender. In this appeal, Defendant's sole issue is a challenge to the sufficiency of the evidence to support the convictions. After a thorough review of the record and the briefs of the parties, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Derek T. Green (on appeal), and Leah Sauceman (at trial), Athens, Tennessee, for the appellant, Timothy C. Moose.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Stephen D. Crump, District Attorney General; and Shari Tayloe, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts*

David Wear, Jr., a narcotics detective for the Madisonville Police Department, was eating lunch at the A&W drive-in on Highway 411 when he "received a phone call from a number that [he] did not recognize." Detective Wear explained that this was "not uncommon" because his "phone is a city issued" phone. He answered the call. The

caller identified himself as "Moose" and asked if he was "David." Detective Wear explained:

> I reply yes, that it is David. I recognize [Defendant's] voice. I've known [Defendant] for some time. [Defendant] has been a witness on different cases of mine and so forth prior to this time. I recognized [Defendant's] voice. I've spoken to him before. I don't know if I've spoken to him before by phone, but definitely person to person. . . . [Defendant] asked if I was interested in purchasing a Stevens shotgun, 12 gauge shotgun. My response then was, "Is it stolen?" "No," at which time I inquired of [Defendant], "Yes, I would be interested in purchasing that shotgun." At that point, I did have prior knowledge that [Defendant] was a convicted felon. . . .

Detective Wear did not immediately meet Defendant to purchase the gun. He was in the middle of another "buy-bust" investigation and continued that investigation before he got another phone call from Defendant at approximately 2:22 p.m. At that time, Defendant called Detective Wear and arranged a meeting at the Dollar General on Highway 68.

Detective Wear went to the Dollar General with Chief Greg Breeden and Detective Jim Wall. Detective Wear "made contact with the vehicle that [he had] known [Defendant] to drive in the past," a dark gray Toyota Camry or Corolla, in the Dollar General parking lot, "facing away from the building." Detective Wear was not sure to whom the vehicle was registered but knew both Defendant and his girlfriend, Aspen Jauod, to drive the vehicle. Two men that Detective Wear recognized were in the vehicle. A man named Randy Carter was sitting in the back seat of the vehicle and a man named Charles Mullinax was in the front passenger seat of the vehicle.

Defendant exited the Dollar General "[w]ithin two or three minutes" of Detective Wear's arrival. An officer patted Defendant down for weapons. Defendant had "three to four rolls of toilet paper that had been taken out of the Dollar General" on his person. Detective Wear described Defendant as "shocked." Detective Wear informed Defendant that he was there about the shotgun. Detective Wear "may have used the phrase, 'the show's over. I'm the David you've been talking to.'" Defendant informed Detective Wear that he thought he was talking to David Russell, not the officer. Defendant told Detective Wear that the shotgun was inside the trunk of the vehicle and opened the trunk. Inside he recovered a Stevens 12 gauge shotgun and a "black belt" which contained nine shotgun shells. Defendant was arrested.

Later that evening, Ms. Jaoud came to the police station and spoke with Detective Wear about the incident. Detective Wear admitted on cross-examination that there was a

statement made during this conversation that someone else owned the gun. Detective Wear admitted that he did not write down or record the statement.

Chief Breeden gave his version of the events. He testified that he was eating lunch with Detective Wear on the day of the incident. After Detective Wear received a phone call, Detective Wear commented that he thought he "just had a convicted felon try to sell us a gun." Chief Breeden said, "let's go buy it." Later that day, Chief Breeden arrived at the Dollar General. He "wasn't the first person there." Immediately, Detective Wear and another officer started talking to Defendant. Chief Breeden "went to the passenger side and started talking to the guy sitting in the passenger seat." He confirmed that Mr. Mullinax was in the passenger seat and Mr. Carter was in the back seat. Chief Breeden saw a shotgun in the opened trunk of the vehicle, but he did not see who opened the trunk.

Ms. Jauod testified for Defendant. She was incarcerated at the time of her testimony on a violation of misdemeanor probation. She admitted that she was dating Defendant at the time he was arrested and that the two were still in a relationship. Ms. Jauod knew that Defendant was a convicted felon. Ms. Jauod explained that her grandfather had died not too long before the incident. On the day of Defendant's arrest, she drove her car, a Nissan Sentra, to meet her cousin who lives off of Oak Grove Road to get a few things that belonged to her grandfather including a Stevens model shotgun and several shells. The cousin gave the items to Ms. Jauod so that she could sell them to make some money. Ms. Jauod got the gun, put it in the trunk, and drove to meet Defendant at his nephew's house. Defendant told her that he knew someone that might buy the gun. Defendant made a call to someone Defendant thought was David Russell to see if he would be interested in purchasing the gun. Ms. Jauod claimed that after the call, Defendant and "a couple of his friends [] took his nephew's [truck] over to the Dollar General Store" to meet Mr. Russell.

About thirty minutes later, Ms. Jauod and "Latisha," Defendant's nephew's girlfriend, left in Ms. Jauod's vehicle to go to Dollar General. "Latisha's" last name is not provided in the transcript. The truck was in the parking lot but nobody was in the truck. Ms. Jauod "needed to go see [her] mom down the road." Latisha wanted to take the truck she shared with Defendant's nephew, so Ms. Jauod "left the keys in the switch" of her vehicle, something that she did "out of habit." Latisha took her in her truck to "go see [her] mom right down the road." By the time she finished her visit with her mother, she had received telephone calls from friends about Defendant's arrest. Ms. Jauod went to the police station and "told David Wear that [Defendant] was not in possession of the gun, that the gun was [hers]." She told him that she came to be in possession of the gun after her grandfather died.

Defendant stipulated that he was convicted of felony possession of drug paraphernalia in May of 2003.

The jury found Defendant guilty of the lesser included offense of attempted possession of a weapon by a convicted felon. The trial court sentenced Defendant to six years for the Class E felony, as a career offender, to be served at sixty percent. The trial court denied a timely motion for new trial. Defendant appealed.

*Analysis*

On appeal, Defendant challenges the sufficiency of the evidence. Specifically, he argues that the trial court erred in denying the motion for judgment of acquittal because the proof was insufficient to convict him of either possession of a firearm or attempted possession of a firearm because there was no proof of actual or constructive possession of the shotgun.

Defendant was convicted of an attempted violation of Tennessee Code Annotated section 39-17-1307, "Unlawful Carrying or possession of a weapon," which provides in pertinent part that "[a] person commits an offense who unlawfully possesses a firearm, as defined in § 39-11-106, and . . . [h]as been convicted of a felony drug offense." Tenn. Code Ann. § 39-17-1307(b)(1)(B). A defendant commits criminal attempt when he "[a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." Tenn. Code Ann. § 39-12-101(a)(3). "Conduct does not constitute a substantial step under subdivision (a)(3), unless the person's entire course of action is corroborative of the intent to commit the offense." Tenn. Code Ann. § 39-12-101(b).

Possession may be constructive as well as actual. *State v. Shaw,* 37 S.W.3d 900, 903 (Tenn. 2001); *State v. Transou,* 928 S.W.2d 949, 955-56 (Tenn. Crim. App. 1996); *State v. Cooper,* 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). "Constructive possession requires that a person knowingly have the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. In essence, constructive possession is the ability to reduce an object to actual possession." *State v. Copeland,* 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). "Elements of possession for purposes of constructive possession are questions of fact for the [finder of fact] . . . ." *State v. Ronald Killebrew,* No. W2003-02008-CCA-R3-CD, 2004 WL 1196098, at *3 (Tenn. Crim. App. May 26, 2004), *no perm. app. filed.*

A motion for judgment of acquittal raises a question of law for the trial court's determination. *State v. Hall,* 656 S.W.2d 60, 61 (Tenn. Crim. App. 1983). When the trial

court is presented with a motion for judgment of acquittal, the only concern is the legal sufficiency, as opposed to the weight, of the evidence. *State v. Blanton*, 926 S.W.2d 953, 957 (Tenn. Crim. App. 1996). Appellate courts are ill-suited to assess whether the verdict is supported by the weight and credibility of the evidence. *State v. Moats*, 906 S.W.2d 431, 435 (Tenn. 1995). Thus, appellate review is limited to sufficiency of the evidence pursuant to Rule 13(c) of the Rules of Appellate Procedure. *State v. Burlison*, 868 S.W.2d 713, 718-19 (Tenn. Crim. App. 1993).

Accordingly, the standard by which the trial court determines a motion for judgment of acquittal is, in essence, the same standard that applies on appeal in determining the sufficiency of the evidence after a conviction. *State v. Little*, 402 S.W.3d 202, 211 (Tenn. 2013. The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (citing *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)).

The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

Defendant stipulated that he had a prior conviction for felony possession of drug paraphernalia. Defendant called Detective Wear and asked him if was interested in purchasing a shotgun. Defendant called Detective Wear a second time to arrange a meeting time and location. Detective Wear went to the specified location at the specified time where he saw a vehicle that Defendant was known to drive. Defendant exited the store. When approached and questioned by Detective Wear, Defendant admitted that the shotgun was in the trunk of the vehicle. Despite Ms. Jauod's testimony that the shotgun belonged to her, the jury chose to determine the facts sufficient to support a conviction for attempt. The credibility determination is reserved for the jury and a jury's verdict of guilt resolves all conflicts of evidence in the favor of the State. *Campbell*, 245 S.W.3d at 335 (citing *Byrge*, 575 S.W.2d at 295). Under these well-established standards, the proof admitted at trial was clearly legally sufficient to sustain Defendant's conviction of one count attempted possession of a weapon by a convicted felon. Tenn. Code Ann. § 39-17-1307.

## CONCLUSION

After a thorough review of the record and applicable law, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE

- 6 -